And the next case is James River Insurance Company v. Rich Bon Corporation. And we have Junaid Suvani for the appellant and Anthony Murphy for the appellees, and I'll let you all get settled. Oh, and Mr. Suvani. And Mr. Suvani, whenever you're ready to proceed, please do so. Good morning, Your Honors. May it please the Court. My name is Junaid Suvani, and I represent the appellate, James River Insurance Company. One month ago, this Court entered a ruling in National Trust Insurance Company v. Souther Heating and Cooling that affirmed the dismissal of a declaratory relief action when a parallel proceeding was not pending. That case involved a very specific set of facts and a very unique coverage exclusion. Judge Brasher, in his concurrence, explained he was writing separately to emphasize the Court's opinion does not suggest that district courts should or could decline to resolve routine coverage disputes as a regular practice. James River respectfully submits that this is a routine coverage dispute, and if this Court allows this dismissal to stand, it will fundamentally alter the way declaratory relief actions are handled within this circuit. The underlying facts are straightforward. There was a shooting at a nightclub owned by the appellees called the Mint Lounge. As a result of this incident, two lawsuits were filed against Mint. The first was filed by Markel Shellman, who was a patron at the club, and the second was filed by David Hilbert, who was working at the club as a security guard. James River insures Mint under a general liability policy. This policy has a $50,000 sublimit for claims arising out of an assault or invader. James River ended up resolving the Shellman suit, the first action, for $50,000. The primary issue If you don't mind, I'll go ahead and ask you a few questions because I think we're pretty familiar with the facts. When a district court assesses parallel proceedings under emeritus, should it analyze how the factors apply to each claim in the proceedings, or should it analyze as a whole how those factors apply to the case? I would submit that the factors should apply to a case as a whole to determine what the purpose of the case is. Again, the issue is whether James River should have been deprived of federal jurisdiction and whether we were entitled to it. As you would see in our complaint that we filed, count one was based on exhaustion, which is the main reason we sought declaratory relief. Count two was based on the exclusions. In its dismissal order, the district court only looked to the exclusions. We could have just dismissed count two and we would never be here today. The court could have dismissed that action or stayed count two alone and allowed us to proceed on exhaustion. It's our position that the district court abused its discretion when it completely deprived James River of federal jurisdiction, totally. The reason it's, I think, a hard question for me is, in this case, we have two claims, right? One of which is proceeding in the state, which, although that's not just positive, it, I think, weighs heavily in the balance. The other, which, as I understand it, is not a part of the state litigation, so that seems somewhat in equipoise. What if you had five factors that were very, five issues and claims that were very similar to what was going on in state court versus only one in federal? Or the opposite, five, only one factor that was similar to, one claim that was similar to what was going on in state court, and then five that were unique to the federal declaratory action. How is the court meant to balance those in those different types of cases? Your Honor brings a good point, and I think the court clarified this in national, in Southern Heating, where it said it's a totality of circumstances standard. It's very difficult to determine exactly what would happen in what case, and we would respectfully submit that the issues of the exclusions are not tied to the underlying state court. They can easily be addressed in the coverage action, and they routinely are by district courts within the circuit. The duty to defend is only based on the allegations. All the district court had to do was review the operative underlying complaint and see if it was alleged that Hilbert was an employee, and also if it was alleged that Mintz's liability stemmed from workers' compensation law. This is routinely done, and it would be an easy analysis. Was there an indemnification claim did you sue over to try to get a declaratory judgment about ultimate indemnification? Well, we sued on the duty to defend, but as the court is aware, if there's no duty to defend, there's no duty to indemnify. One of the issues that we deal with in these cases all the time, and that was the bane of my existence for a year as a district judge, was that the indemnification issue really isn't ripe until the case is over. How is that sort of problem in these cases? I assume you do this a lot, I guess, and the reason I'm asking you this question. How should that factor into whether a district court declines or accepts one of these declaratory judgment actions? Well, I think that the fact of the duty, again, the duty to defend will determine everything. It will determine indemnity. It would completely resolve the coverage dispute. So I think the proper method, and what a lot of district courts do within the circuit and nationwide, is they rule on the duty to defend. No duty to defend, that's the end of the litigation. If they do find a duty to defend, then they stay the action pending resolution of the underlying case. Sometimes they dismiss it, but I think the duty to, resolving the duty to defend serves a great benefit, not only to insurers, but to policyholders as well, because then they know that they're going to be covered or defended against a claim or not. So I don't think just dismissing outright because of the indemnity issue might eventually have to wait until the underlying case is resolved as the right course of action. I guess one of the things that I'm kind of thinking of as I think through this problem is that, to go to Judge Grant's question, is you might have some of these cases that are really more about the duty to defend, and other of these cases that are really focused more on the indemnification after the fact. It just strikes me that that's something that the district court might be able to consider in the exercise of its discretion, what the real issue, sort of the real issue is in the case. What do you think about that? Well, I think the duty to defend is always going to be a primarily important issue, especially when a defense is being provided. So I don't know. So the insurance company has decided to defend, right? Which suggests that the insurance company doesn't feel really strong about its arguments to not defend, versus another case, for example, where maybe the insurance company has decided they don't want to defend. So actually, that is a more dispositive question. Any difference in the way you might evaluate those? Well, I would say that would support our position, because we did deny the duty to defend on this one, because our policy was exhaustive. And based on the court's totality of circumstances standard, it's possible that that can happen, but the duty to defend inquiry is so straightforward that it would be an easy resolution. And that's a lot of times why we seek declaratory relief as insurers and policyholders as well, because it's something that can be determined by the four corners of the complaint as compared to the policy, summary judgment type issue, no problem. And so it's a speedy resolution to a significant issue that arises in most liability lawsuits. Is it possible to do, to really perform appropriately a totality of the circumstances review if you only apply the emeritus factors to one of the declaratory judgment claims and not to all of them? I think you have to apply them to all of them. I agree on both counts, they have to be applied. You can't just consider one or the other. But looking at the whole case and the point we filed this lawsuit, and the fact that we could have dismissed count two and proceeded forward and we would never be here today is a clear abuse of discretion. The point is, as Judge Brasher noted in Southern Heating, there has to be a limit about the discretion that district courts have as far as dismissing these actions. This is a clear abuse of discretion. If this isn't, then nothing else will be. There has to be a limit to it, and we believe this situation presents it, because exhaustion has nothing to do with it. And the district court's order did not mention exhaustion at all, which was the primary reason we shot declaratory relief. And the appellees did not argue otherwise within their brief, because there is no argument. And again, the exclusions, we think, are not intertwined with the state case, because in the state tort action, the complaint alleges that Halbert is an employee and he's directly trying to pierce, mince worker compensation immunity. So we think on its face, both aspects clearly apply as to the duty to defend. This is a run-of-the-mill coverage dispute. If this court allows this dismissal to stand, it will fundamentally alter the way declaratory relief actions are handled within this circuit. For these reasons, James River respectfully asks that this court reverse the district court's decision. Thank you, Mr. Cervante, and you've got five minutes left for rebuttal. Mr. Murphy? Thank you, Your Honors, and may it please the Court. My name is Anthony Murphy, and I represent the appellee Dana Hilbert as personal representative for the estate of David Hilbert. I'll be focusing on two points in my argument that are before the Court today. First, the district court did not abuse its broad discretion when it correctly determined there was no requirement that the state and federal action involve the same exact parties. And instead, it took into account the similarity between the parties and issues under the totality of the circumstances analysis under emeritus, which is also consistent with this Court's recent opinion in National Trust Insurance Company v. Southern Heating and Cooling Incorporated. Second, the district court did not abuse its discretion upon considering and analyzing the emeritus factors in favor of declining jurisdiction. As this Court clearly stated in National Trust Insurance Company v. Southern Heating and Cooling, the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under the statute 2201A. Counsel, can I let you, can I get you to jump to the fact that the district court failed to consider count one of the amended complaint? And why is that failure to consider the exhaustion issue not an abuse of discretion? Your Honor, we would argue that the failure to consider the exhaustion is not an abuse of discretion. The reason being is because it's irrelevant as to the Court's decision to dismiss the It's our position that the district court didn't discuss it at length. The policy exhaustion has no bearing on whether or not a state court case and federal court case are parallel or similar, and it has little to no bearing on the district court's application of the emeritus factors. The only relevance that policy exhaustion might have is that, is James River's failure to defend their insured rich bond, which does business at Mint Lounge, and try to resolve any and all potential claims they're aware of, including Hilbert's claim, and further to avoid bad faith claims made by a rich bond as it's insured, and by Hilbert as a third party, which arguably are ripe for determination in state court. I would also add. So that's interesting. So you said that a bad faith claim might be ripe for determination in state court. I mean, don't you have to wait until there's a verdict or some kind of award or something in the underlying litigation before you pursue a bad faith claim against the insurance company? Well, the reason we state that, Your Honor, is if you look to the docket entry 811 on page 3 in the footnote, essentially it points out James River knew of Hilbert's claim prior to the Hilbert filing its suit, and when rich bond, in responding to James River's motion for summary judgment in the district court case, which ultimately was not heard, in their statement of disputed facts, they included this letter, and in that footnote it basically stated that if Hilbert or Salguero ever file suit, please notify us immediately so that James River can specifically analyze the availability of coverage and provide rich bond with a position. This is a clear indication that James River knew it had a duty to defend, otherwise it would have maintained the position that Hilbert was allegedly excluded from recovery. I might add, Your Honor, the case in district court was actually stayed pending the resolution of another lawsuit that was filed by a gentleman named Markel Shellman. When you say the case, you mean the underlying tort action was stayed? No, the district court case was stayed. Correct, Your Honor. The district court case was stayed pending the resolution of another action. It was another suit that was filed by somebody else who was involved in this entire incident named Markel Shellman, and the case remained stayed for quite some time. It actually remained stayed past the time that it was supposed to be lifted, the stay was supposed to be lifted after the Shellman lawsuit actually settled. It wasn't until our motion to lift the stay was filed that the case was actually allowed to proceed, and it actually proceeded all the way through to a motion for summary judgment that was filed by James River. However, the district court decided to rule on the motion to dismiss that was filed previously, making that motion for summary judgment moot. But with respect to that, this is the reason why we believe that it wasn't discussed at length because it's intertwined with a lot of the factual issues and legal issues that are in dispute in the state court case, and the reason for that is it could potentially prevent Hilbert from gaining access to a part of the policy of James River that James River actually indicated in its initial complaint when it filed in the district court Hilbert was entitled to. Of course, after the stay was lifted, they did amend their complaint to indicate that the policy was exhausted and that Hilbert was not entitled to it based on the fact that he was an employee. However, I would respectfully add that in the state court case, that has yet to be determined. But how could the state court case even arguably determine the exhaustion issue? Well, not so much as it would determine the exhaustion issue, more so that it would determine what Hilbert is potentially entitled to under their policy, and it could also then require James River to then defend Rich Bond doing business as mint in the state court case. Yeah, but I mean, I guess none of that's going to be litigated in the state court case. You're just saying that the state court case is sort of relevant because that's the, I mean, isn't the question that we're looking at here whether there's somehow something, some way in which the issues that are present in this federal case going to be resolved are affected in the state court case? I mean, is that the question? Yes, Your Honor. And my position on that, the Hilbert's position on that is that the factual issues in dispute in the state court case could potentially affect whether or not Hilbert is entitled to part of the policy of James River. And the reason being is because in James River's amended complaint, it indicates that he's not entitled to it because of exhaustion, which, as I mentioned previously, they knew he was, they knew he had filed a claim against them. They knew he was entitled to it, but then they switched their position when they filed their amended complaint and then went with the argument that because of these workers' compensation and employer liability exclusions that he was not entitled whatsoever. Again, as I mentioned, the factual issues in dispute in the state court case deal with a Florida statute, specifically 440.11 that talks about an intentional tort exception that applies when the employer, based on similar accidents that may have occurred, knew that there was an incident such as this that was virtually certain to occur. And specifically, at the motion for summary judgment hearing in the state court case, significant arguments were made by Richbond related to the employment status of Hilbert, whether or not he was acting in the course of his employment, and whether or not he was then not entitled at all whatsoever because of the workers' compensation immunity. And that motion was denied. So at this stage, we are still waiting for a resolution of this case in order to proceed in the state court case. And the judge in that case has continued the case, essentially. I guess I see why count two relates to the state tort action. Maybe I'm missing something, but I don't see how the exhaustion issue implicates the state tort action. Well, again, Your Honor, the exhaustion issue is problematic because of the fact that James was aware of Hilbert's claim and decided prior to Hilbert filing suit that it would just resolve the other suit with the available limits, with the limits that were available to James River, or to Hilbert, my apologies, prior to that suit. In their letter, they specifically state they were aware of Hilbert's claim. This was a letter to counsel for Richbond, their insured. They specifically stated they were aware of Hilbert's claim, that they, you know, had every intention of trying to settle with Hilbert, but they had not heard from Hilbert, and that because Hilbert had not filed suit, that they were just going to resolve the Shellman action in a settlement procedure. So your argument seems to be not that count one has any substantive effect on the state tort action. It's that your concern is that you want the insurance company providing a defense. Yes, Your Honor, especially since they, when they initially filed the declaratory action case in the district court, they specifically indicated that Hilbert was entitled to this part of their policy, this assault and battery limit part of their policy. Is this an emeritus factor that you're describing? Well, it would, I believe it would fall under the eighth factor, which is whether the state court is in a better, the state trial court is in a better position to evaluate the factual issues than is the federal court, and I think that after... Is the state court going to be addressing the exhaustion issue? Not directly, Your Honor. I don't believe directly they will be addressing that, but... So how is this an emeritus factor? Let me return to my original question. The reason we believe it's our position that it falls under, you know, totality of circumstances approach is that the factual issues in dispute in the state court case will be largely impacted by the ability for Hilbert to proceed on its case because there might be an automatic assumption made or judgment made that Hilbert was an employee, that he was not entitled to any parts of the policy because he was an employee, and that, therefore, it essentially could lead to an inconsistent verdict being held in the district court as well as in the state court. The fact remains that there is a duty to defend by James River, and Richbond would then be left without any protection and have to essentially be exposed to more further liability, direct liability, as opposed to having the benefit of James River defense defending the case in state court. Let me ask you this. Your presence here raises another issue, a persistent issue that bothers me about these cases, which is you represent the plaintiff in the underlying tort action, right? Correct, Your Honor. Yet you're arguing about a duty to defend, the person you are suing in the underlying tort action. If the insurance company had filed a lawsuit that was specific to duty to defend and didn't have an indemnification element to it, would you even have standing to address that issue? Could you repeat that, Your Honor? Well, I guess my point, you only care about the indemnification, right? At the end of the day, you're not seeking to make sure that insurance company defends your opposing party in the underlying tort action. All you care is about indemnification. The insurance company has denied duty to defend, so really, the only thing that's ripe, I think, is duty to defend, and indemnification isn't even ripe. Do you even have standing to argue about duty to defend and whether the trial court inappropriately ruled on the duty to defend issue? We would state, Your Honor, that obviously we are representing the plaintiff in the state court case and we don't represent Rich Bond. However, the nature of the case and how it could potentially impact what Hilbert is entitled to in terms of recovery would be severely impacted by a decision made in the district court that the policy was exhausted, and the reason we state that is because it's our position that the policy was exhausted prematurely. What should have been done is that James Rivers should have potentially preserved some of the money that Hilbert was entitled to while settling the other action. Yeah, and you want to make a bad faith claim, I guess, right? That's sort of what you're saying. You're saying that they handle this in bad faith. I mean, is that fair to say? Correct, Your Honor. Okay. Why would this declaratory judgment action that says the policy is exhausted, I mean, why would that affect your bad faith claim that you want to file against? I mean, you're going to have to reach that point eventually to make your bad faith claim that, you know, your bad faith claim relies on the principle that they don't owe you any more insurance. So why do you even care, I guess? Can't you just make your bad faith claim in the future no matter what happens in this case? I'm not sure that we could, Your Honor. I believe that any decision made regarding policy exhaustion and regarding workers' compensation or employer liability exclusion should be made subsequent, whether it's here in district court or it's in state court after a verdict is entered in the state court for the underlying action. Okay. Another factor that we believe is one of the strong points made by the district court is the ninth factor, which is whether there's a close nexus between the underlying factual and legal issues in state law and or public policy and whether or not federal common or statutory law the the or argument that was presented by National Trust in your recent decision specifically he stated counsel for National Trust stated that my apologies or when he was asked by Judge Jordan when the district court could exercise discretion in deciding not to hear a declaratory judgment action he stated and I'm paraphrasing that in Wilton and Brilhart the main concern was maintaining the balance between federal and state interest or stated another way making sure that the concepts of federalism and comedy remain protected and that in a number of other circuit courts the issues before the federal district court that presented unique state issues such as interpreting a state statute or state constitutional law counsel for National Trust conceded that in those situations the district court would still have to exercise its discretion and defer to the state court because there are matters that are unique state interest I see my time has expired my answer briefly conclude briefly the district court correctly determined the cases were parallel and correctly analyze the factors favoring dismissal of the coverage action for the foregoing reasons appellee daniel hilbert especially respectfully requested to affirm the district court's dismissal of the james river coverage action thank you very much and that was very briefly thank you Mr. Suvani you have five minutes for rebuttal thank you if I could address a couple of the issues that came up during the appellee's argument first bad faith the issues regarding whether james river should have exhausted the policy with the shellman suit or not that pertains exactly to bad faith as judge brasher was alluding to it pertains to the bad faith action it's black letter law that bad faith action is not ripe until a coverage determination is made an insurer cannot be sued for bad faith until it is determined that there is coverage that's a preliminary step so any of those arguments can't be raised until the coverage action is determined until the the court determines that the whether the policy was exhausted or not or whether the exclusions apply or not there's no bad faith because if the court concludes that our position is correct and the policy is exhausted then of course we can't be sued for bad faith so none of those issues are relevant and none of those why couldn't you be sued for bad faith if you exhausted the policy limits in bad faith if we that would be the the if we exhausted the policy if we complied with the terms of the policy and we properly exhausted it then we can't be in bad faith i think i think the answer might be that you're an insurance company so people can sue you for whatever they want to but you're saying they don't you think they would win if um if they did sue you for bad faith right and regardless of that they can't sue for bad faith until there's a determination of coverage one way or the other it would be dismissed under this circuit's precedent the second issue is there's no serious dispute exhaustion is not going to be addressed in the state court james river is not a party to that action the policy is not at issue james river can't be named in that action because of florida's non-joinder statute so an insurer can't be or settlement so that will never be addressed there so affirming this dismissal will fundamentally change the way declaratory relief actions are handled within the circuit again james river sought declaratory relief primarily to establish its policy was exhausted which has nothing to do with the state court case no overlap with the state court actions the exclusions as well the employer's liability and workers compensation exclusions are routinely analyzed and determined by district courts within the circuit the duty to defend is only based on the allegations so the court's analysis would have been very straightforward look at the complaint if it's alleged hilbert is an employee employer's liability exclusion applies if it's alleged mince liability stems from workers compensating then the workers compensation exclusion applies and if the court concluded that there was some ambiguity or it wasn't clear it wasn't directly alleged then the court would simply find a duty to defend and proceed forward so this is nothing out of the ordinary this is not like the situation in southern heating those facts were very particular that case as the court is aware involved a pollution exclusion with a hostile fire exception and the issue of whether the exception applied turned on where the fire originated and that that issue directly tied into liability in essence if the the issue that determined the plaintiff's liability also determined if the exception to the exclusion applied so it was directly tied into it we don't have that type of situation here we just have a run of the mill type coverage dispute let me ask you a quick question about what's going on right now so have you decided to defend in the underlying case or is it still you're not defending no we're not defending we we disclaimed outright because we believe our policy was exhausted um you know one thing that strikes me is to me i i don't know why i guess but to me i guess it's a practical matter that matters whether you're defending or not defending um if this case were to just stay dismissed it's dismissed without prejudice what would happen in the real world um would you just sit back and kind of watch to see what happened in the state court case and try to evaluate your liability would you file another declaratory judgment action in state court i mean you wouldn't start defending i guess so what would happen what would the insurance company do uh if we exhausted our appeals uh we would of course file a cert petition in the united states supreme court on this important question of declension but uh we would probably initiate a state court declaratory relief action okay but the issue again is should we be deprived of federal jurisdiction that's the issue and i see my time's almost up so i'll briefly conclude um affirming this court would establish a precedent that a district court can decline to hear a declaratory relief action for just about any reason it would certainly preclude declaratory relief on these exclusions which are only implicated when employees suing an employer and trying to pierce workers compensation immunity but the consequences would be even more far-reaching if this case stands it's not hard to imagine that a district court faced with another run of the mill exclusion similarly rely on its unfettered discretion to dismiss to prevent such a result and to ensure federal declaratory relief remains a viable remedy for insurers and policyholders alike james river respectfully asks that this court reverse the district court's order thank you thank you mr suvani uh thank you both and we have your case under submission and i will as you wrap up call the final case